# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-CT-00243-SCT

*ROBERT HAMMONS, JR.*

*v.*

*C. WADE NAVARRE, II, INDIVIDUALLY AND*
*d/b/a NAVARRE FABRICATION, INC., NAVARRE*
*FABRICATION, INC., VELCON FILTERS, LLC,*
*KNAPPCO CORPORATION AND WILDEN PUMP*
*AND ENGINEERING, LLC*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 12/31/2014 |
| TRIAL JUDGE: | HON. MARGARET CAREY-McCRAY |
| TRIAL COURT ATTORNEYS: | WAYNE E. FERRELL, JR. |
| | JOE S. DEATON, III |
| | MARC A. BIGGERS |
| | MICHAEL C. GATLING |
| | TIMOTHY J. STERLING |
| | W. SCOTT WELCH, III |
| COURT FROM WHICH APPEALED: | LEFLORE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | WAYNE E. FERRELL, JR. |
| | ADRIENNE P. PARKER |
| | BRADLEY S. CLANTON |
| ATTORNEYS FOR APPELLEES: | TIMOTHY J. STERLING |
| | CHARLES G. COPELAND |
| | JAMES R. MOORE, JR. |
| | MICHAEL C. GATLING |
| | RICHARD L. KIMMEL |
| | MARK A. BIGGERS |
| | W. SCOTT WELCH, III |
| | CLAY GUNN |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 06/07/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CHAMBERLIN, JUSTICE, FOR THE COURT:**

¶1.     The dispositive issue before the Court is whether Robert Hammons Jr. properly named fictitious parties in his original complaint so his amended complaint related back to the filing of the original complaint to avoid the statute-of-limitations bar. The Circuit Court of Leflore County ruled that Hammons had failed to comply with the fictitious-party rules and granted summary judgment for the defendants. The Court of Appeals, in an evenly divided decision, affirmed the circuit court's judgment. *Hammons v. Navarre*, 2017 WL 1392835, at *10 (Miss. Ct. App. Apr. 18, 2017).[1]

¶2.     Hammons's amended complaint—fifteen pages longer than his original complaint—added new parties and new claims against those parties. As the amendment was not a substitution under Mississippi Rule of Civil Procedure 9(h), it does not relate back to the time of filing of the original complaint under Mississippi Rule of Civil Procedure 15(c)(2). Further, the amended complaint was filed outside the statute of limitations, and Hammons's claim is time-barred. Thus, we affirm the judgment of the circuit court and the decision of the Court of Appeals.

---

[1] Wilson, J., wrote the lead opinion, in which Griffis, P.J., Carlton and Fair, JJ., concurred. Barnes, J., concurred in part and in the result without separate written opinion. Greenlee, J., dissented with separate written opinion, in which Lee, C.J., Irving, P.J., Ishee and Westbrooks, JJ., joined.

**FACTS AND PROCEDURAL HISTORY**[2]

¶3. On October 25, 2009, Hammons was piloting a helicopter spraying herbicides on timber fields near Eupora when the helicopter crashed. Hammons was employed by Provine Helicopter, which owned the subject helicopter. Hammons was severely injured and now is paralyzed from the waist down.

¶4. On May 26, 2011, the National Transportation Safety Board ("NTSB") adopted and published its final report on the accident. The NTSB found that the probable cause of the crash was a loss of engine power due to fuel contamination. The NTSB report stated:

> A postaccident examination of the helicopter's fuel system revealed a brown contaminate, of a density greater than jet fuel. . . . Examination of the dual use truck that was used to service the helicopter with fuel and herbicide revealed that the fuel filter between the Jet–A fuel tank and the fuel delivery hose was also contaminated. A common trough that ran along the top of the fuel truck provided an area where any over flow of water used to fill the truck's herbicide tank could be introduced into the truck's Jet–A fuel tank through gaps in the fuel tank's cap seal.

The "dual use truck" was owned and operated by Hammons's employer, Provine Helicopter.

The NTSB report went on to state:

> A 500-gallon fuel tank was located a[t] the foreword end of the truck, while a tank for mixing water and spray chemical was located at the aft end. A common trough ran along the top portion of both tanks, which would retain any over-fill of water or fuel, and was drained through two small holes at the forward end. Examination of the cap for the fuel tank revealed that the o-ring seal and the fuel vent were deteriorated, and that the seals were not continuous.

---

[2] Much of this section is taken directly from the statement of facts and procedural history of the Court of Appeals. *Hammons*, 2017 WL 1392835, at **1–4.

The fuel tank was configured in a way that fuel was taken directly from the lowest point in the tank, and pumped through a filter to the fuel filler hose. No standpipe was present at the bottom of the tank that would have prevented any collected water from entering the fuel filter, and no pressure gauges or sensors were installed up or downstream of the filter.

The truck-based fuel tank was checked for the presence of water using a water finding paste applied to a dip stick. A small amount of water was detected. The fuel filter between the tank and the delivery hose was removed and examined. The filter element appeared "bulged" and water was present in the filter. The brown contaminant was present throughout the paper folds of the fuel filter, and was collected along its interior.

¶5. On December 27, 2011, Hammons filed an eleven-page complaint in the circuit court. The only named defendant was Scott Petroleum, which supplied fuel to Provine Helicopter. Hammons alleged that the fuel supplied by Scott Petroleum "was defective and unreasonably dangerous." Hammons further alleged that there was no "substantial change in [the fuel's] condition from the time the fuel left the places of manufacture and/or processing until the time of the accident." Rather, Hammons alleged, the fuel was already in a "defective condition" when it was "sold" and "left the control of Scott Petroleum." The complaint did not allege or articulate any wrongful conduct by any other entity, known or unknown.

¶6. Hammons's complaint purported to name "Defendants A–P." As to these defendants, the complaint stated, in its entirety:

Defendants, A–P, are corporations or persons whose true identities and addresses are unknown at this time and whose liability to the Plaintiff is unknown at this time. Plaintiff will amend his Complaint and include the true names and addresses of the Defendants A–P once their identities are learned and once their liabilities are ascertained.

¶7. Scott Petroleum was served on March 8, 2012. On April 6, 2012, Scott Petroleum's

4

counsel provided Hammons's counsel with a copy of the NTSB report. The cover letter from Scott Petroleum's counsel stated in part:

> Based on this report, it appears that if fuel contamination existed, that fuel contamination originated in the field service truck owned by Provine Helicopter which refueled the subject helicopter several times the day of the incident. Consequently, pursuant to this correspondence, we hereby request that you dismiss this matter with prejudice as to [Scott Petroleum].
>
> Obviously, Scott Petroleum can have no liability for the failure of Provine Helicopter to maintain its service truck.

Scott Petroleum subsequently answered the complaint and filed a motion for summary judgment that attached the NTSB report as an exhibit.

¶8. On April 8, 2013, Hammons filed a motion for leave to file an amended complaint. On April 17, 2013, the court entered an agreed order granting Hammons's motion. On April 30, 2013, Hammons filed a twenty-six-page amended complaint that identified Defendants A through F from the original complaint as follows: Metal Craft Inc. ("Metal Craft"); Wade C. Navarre and Navarre Fabrication (collectively, "Navarre"); Velcon Filters LLC ("Velcon"); Knappco Corporation ("Knappco"); and "Wilden."[3] The amended complaint alleged that Metal Craft and Navarre manufactured the fuel truck and fuel compartments used to fuel the helicopter; the amended complaint further alleged, for the first time, that the truck and compartments were defective. Also, the amended complaint alleged that Velcon Filters manufactured a fuel filter on the fuel truck; the amended complaint further alleged,

---

[3] "Wilden" subsequently identified itself as Wilden Pump and Engineering LLC.

5

for the first time, that the filter was defective. The amended complaint alleged that Knappco manufactured the lid on the fuel truck's fuel tank; the amended complaint further alleged, for the first time, that the lid was defective. Finally, the amended complaint alleged that Wilden manufactured the fuel truck's pump; the amended complaint further alleged, for the first time, that the pump was defective.

¶9. Navarre, Velcon, Knappco, and Wilden all filed motions to dismiss and/or for summary judgment. They argued that Hammons's claims against them were barred by the statute of limitations because the original complaint did not properly identify them as fictitious parties pursuant to Mississippi Rule of Civil Procedure 9(h) and, therefore, the amended complaint's allegations against them did not relate back to the date of the original complaint. Knappco and Wilden also argued that the claims against them should be dismissed due to insufficient service of process.[4] It does not appear that Metal Craft was ever served, and it never entered an appearance.

¶10. In response to the defendants' motions, Hammons's attorney submitted an affidavit that stated in part:

> I was associated on or about February 9, 2011. I was asked to investigate and prosecute a claim, if one existed, against those individuals or entities responsible for the accident on October 25, 2009.

---

[4] The circuit court did not address the insufficient-service-of-process arguments because it dismissed all claims against Knappco and Wilden based on the statute of limitations. Knappco and Wilden argued the issue before the Court of Appeals as an alternative ground for affirmance. We need not address the issue, as Hammons's claims are time-barred.

. . . . I immediately began to research and investigate the accident but was prohibited from making any meaningful investigation whatsoever because of the inability to inspect and test the fuel and the fueling equipment. I was not provided with a description of most of the products involved in the fueling operation; the names and addresses of manufacturers of the parts; or each party's roll [sic] in the refueling procedure until January of 2013. The NTSB investigator filed his supplemental report on May 26, 2011, and for the first time mentioned potential problems with the fuel supply devices. . . .

. . . . The NTSB did not release any of the information until May 26, 2011, and the fuel equipment used by Provine Helicopter was not made available to the Plaintiff until approximately January of 2013 . . . . Only after suit was filed and after Scott Petroleum partially responded to discovery requests was it revealed that [Metal Craft, Navarre, Velcon, Knappco, and Wilden] were potentially additionally responsible for the October 25, 2009 accident . . . .

I did not receive . . . the responses to Freedom of Information requests [from the NTSB/FAA] until April of 2013. A copy of my Freedom of Information request letter dated March 6, 2013, is attached hereto . . . .

¶11. The circuit court subsequently held a hearing on the defendants' motions to dismiss and/or for summary judgment and entered an opinion and order granting summary judgment in favor of Navarre, Velcon, Knappco, and Wilden. The court certified its order as final pursuant to Mississippi Rule of Civil Procedure 54(b).

¶12. Hammons appealed to this Court, and we assigned the case to the Court of Appeals, which affirmed the trial court's judgment. *Hammons*, 2017 WL 1392835, at *10. Hammons then petitioned this Court for a writ of certiorari, which we granted. *Hammons v. Navarre*, 2018 WL 709221, at *1 (Miss. Jan. 4, 2018). Upon review, we affirm the decision of the Court of Appeals.

7

**STANDARD OF REVIEW**

¶13.   This Court reviews an order granting or denying summary judgment de novo. ***Peoples Bank of Biloxi v. McAdams***, 171 So. 3d 505, 508 (Miss. 2015). Moreover, we subject all questions of law to a de novo standard. ***Henley Timber Co. v. Ponti***, 991 So. 2d 1195, 1196 (Miss. 2008). The issue of the statute of limitations is a question of law which we review de novo. ***McAdams***, 171 So. 3d at 508.

**ANALYSIS**

### I.   Fictitious Parties

¶14.   Rule 9(h) provides:

> When a party is *ignorant of the name of an opposing party and so alleges in his pleading*, the opposing party may be designated by any name, and when his true name is discovered the process and all pleadings and proceedings in the action may be amended *by substituting the true name* and giving proper notice to the opposing party.

M.R.C.P. 9(h) (emphasis added). Rule 15(c)(2) allows these name substitutions to relate back to the date of original filing. M.R.C.P. 15(c)(2). "An amendment pursuant to Rule 9(h) is not an amendment changing the party against whom a claim is asserted and such amendment relates back to the date of the original pleading." *Id*.

¶15.   This Court has held that "the purpose of Rule 9(h) is to allow a plaintiff to proceed with a lawsuit where the plaintiff knows and can articulate the wrongful conduct of, and claims against, the fictitious party, but simply does not know that party's name." ***Veal v. J.P. Morgan Tr. Co.***, 955 So. 2d 843, 845–46 (Miss. 2007). We also have recognized that "[i]t

is a principle of general application, though, that ignorance of the opposing party for fictitious party practice extends beyond mere lack of knowledge of the opposing party's name." ***Womble v. Singing River Hosp.***, 618 So. 2d 1252, 1267 (Miss. 1993), *declined to follow on other grounds by **Sparks v. Kim***, 701 So. 2d 1113, 1115–17 (Miss. 1997).

### A. *Womble* and *Veal*

¶16. In his briefs before the Court of Appeals and his petition for writ of certiorari, Hammons argues that *Veal* is an improper departure from *Womble*. Navarre, Velcon, Knappco and Wilden all maintain that *Veal* is consistent with *Womble*. We agree with Navarre, Velcon, Knappco and Wilden. While the two cases do not conflict, a discussion of their facts and holdings is warranted.

¶17. *Womble* was a wrongful-death action brought against a number of medical defendants by the heirs of Helen Womble, who died on April 11, 1986. *Womble*, 618 So. 2d at 1255. The original complaint, filed on March 28, 1988, included five fictitious parties who were alleged "to be unknown at that time." *Id*. All of the defendants were alleged to have "committed various acts of negligence which had led to . . . Womble's death." *Id*. The trial court allowed the heirs to amend their complaint and substitute Dr. Calhoun for one of the fictitious parties on November 7, 1989. *Id*. at 1256. While the heirs admitted that they knew Dr. Calhoun had seen Womble, they maintained "that they had had no reason to suspect any negligence on Doctor Calhoun's part until" another physician's deposition testimony revealed "that . . . Womble may have stood a higher chance of survival had some method

9

been used to diagnose her illness and bring in a surgeon earlier." *Id*.

¶18.    At the outset of its analysis of the addition of Dr. Calhoun to the suit, the ***Womble*** Court noted that Mississippi Code Section 15–1–36 (Supp. 1991), a two-year statute of limitations, governed the heirs' action. *Id*. at 1265–66. The Court recognized that "[t]he running of the statute of limitations under § 15–1–36 may be tolled for a reasonable period of time to allow plaintiff to acquire and peruse the appropriate medical records." *Id*. at 1266. Concluding that Dr. Calhoun had been added to the complaint outside the period of limitations, the Court emphasized

> that there were medical records which reflected the extent of Dr. Calhoun's treatment of the decedent on the day she was admitted to the hospital. The exercise of reasonable diligence should have led appellants to discern the extent of Dr. Calhoun's involvement in this case and join him in this suit long before the passage of three years and seven months after . . . Womble's death.

*Id*.

¶19.    With the statute-of-limitations issue decided, the ***Womble*** Court turned to the argument that Dr. Calhoun's substitution for an original fictitious party related back to the time of filing of the original complaint under Rules 9(h) and 15(c)(2). *Id*. at 1266–67. After quoting Rules 9(h) and 15(c)(2), the Court recognized that:

> There is a dearth of Mississippi law on the application of Rule 9(h). It is a principle of general application, though, that ignorance of the opposing party for fictitious party practice extends beyond mere lack of knowledge of the opposing party's name. Even if the plaintiff knows the true name of the person, he is still ignorant of his name if he lacks knowledge of the facts giving him a cause of action against the . . . person.

*Id*. at 1267 (citing ***Braceda v. Gamsby***, 267 Cal. App. 2d 167, 72 Cal. Rptr. 832 (1968),[5] and

***Columbia Eng'g v. Epsey***, 429 So. 2d 955 (Ala.1983)).[6]  The Court then found that Rule

9(h) did not apply, noting that even the heirs "admit[] that no fair construction of the

pleadings would lead to the conclusion that Dr. Calhoun was identified, even as a John Doe.

For that reason this rule cannot save the action against him, in any event." ***Id***.  In rejecting

the Rule 9(h) argument, the Court also returned to its earlier, reasonable-diligence analysis:

"as noted above, there were numerous medical records on file at SRH indicating the extent

to which . . . [Dr.] Calhoun had participated in the treatment of Helen Womble." ***Id***.

¶20.    Without citing ***Womble***, this Court, in ***Veal***, again applied Rule 9(h) to a wrongful-

death action.  ***Veal***, 955 So. 2d at 844.  In ***Veal***, Willie Veal brought an action on behalf of

_____

[5]In its discussion of the civil procedure rule that governs fictitious parties in California, the ***Braceda*** Court cites ***Garrett v. Crown Coach Corp.***, 259 Cal. App. 2d 647, 650, 66 Cal. Rptr. 590, 592 (Ct. App. 1968). ***Braceda***, 72 Cal. Rptr. at 838. ***Garrett*** explains that "even though the plaintiff may know of the existence of a person, the plaintiff is 'ignorant' within the meaning of [the fictitious-party rule] *if he lacks knowledge of that person's connection with the case*." ***Garrett***, 66 Cal. Rptr. at 592. ***Womble***'s rule statement and holding is in agreement with ***Garrett***'s interpretation of the term "ignorant" within the rule.

[6]***Epsey*** states,

[A] plaintiff, in order to invoke the relation back principles of Rules 9(h) and 15(c), must meet the following criteria: . . . 2) plaintiff must be ignorant of the identity of the fictitious party, *in the sense of having no knowledge at the time of the filing that the later named party was in fact the party intended to be sued.*

***Epsey***, 429 So. 2d at 958–59 (Ala. 1983) (emphasis added).

Willie Smith's estate against two corporations and a number of fictitious parties.[7] *Id*. With written consent of the two named defendants, Veal filed a second amended complaint that substituted newly named defendants, including J.P. Morgan Trust Co. ("J.P. Morgan"), for the named fictitious parties. *Id*. "In addition, the Second Amended Complaint included new facts and allegations regarding the 'substituted' defendants' involvement [in the suit]." *Id*. J.P. Morgan moved to dismiss, and the trial court granted the motion. *Id*. at 844–45.

¶21.    On appeal, the ***Veal*** Court held that the parties added in the amended complaint were newly added parties and not substitutions under Rule 9(h). *Id*. at 846–47. The Court noted that the original complaint's allegations concerning the alleged fictitious parties "provide[d] no indication that Veal was aware of the existence of any of the additional defendants added by the Second Amended Complaint. Veal simply attempted to substitute newly discovered defendants for the previously named fictitious parties." *Id*. at 846.

¶22.    As the Court of Appeals observed, ***Veal***'s discussion of Rule 9(h) that led to this

---

[7] As to the fictitious defendants, Veal, in her original complaint, had alleged:

> Said Defendants are named pursuant to Miss. R. Civ. P. 9(h), insofar as their acts and/or omissions were negligent and/or otherwise tortious with respect to the care and treatment of, or in the staffing, supervision, administration and direction of the care and treatment of, [the deceased] during her residency at AUTUMN LEAVES NURSING HOME. Alternatively, said Defendants are liable for the negligent and/or otherwise tortious acts and/or omissions of others with respect to the care and treatment of [the deceased] during her residency at AUTUMN LEAVES NURSING HOME.

*Id*. at 846 (alterations in original).

12

conclusion "is directly applicable to the present case." ***Hammons v. Navarre***, 2017 WL 1392835, at *4 (Miss. Ct. App. Apr. 18, 2017). The ***Veal*** Court explained:

> [W]here a plaintiff wishes to file suit against a defendant whose name is not known, the suit may be filed by providing the defendant a fictitious name. Rule 9(h) is not intended to serve as an insurance policy to plaintiffs who wish to protect themselves in case they discover new defendants in the course of litigation. Rule 9(h) authorizes the plaintiff to deviate in only one respect from the requirements of the Mississippi Rules of Civil Procedure in bringing a claim. That is, the plaintiff is allowed to use a fictitious name, rather than the true name of the defendant. In other words, the purpose of Rule 9(h) is to allow a plaintiff to proceed with a lawsuit where the plaintiff knows and can articulate the wrongful conduct of, and claims against, the fictitious party, but simply does not know that party's name.
>
> Rule 9(h) does not say that a plaintiff may include a fictitious party because the plaintiff suspects that there **might** be someone out there who **might** have engaged in conduct which **might** be actionable. For instance, if the plaintiff knew that a nurse was assisting a doctor with a procedure and that the nurse engaged in negligent conduct, the plaintiff is not prevented from proceeding with litigation against the nurse simply because the plaintiff does not know the name of the nurse. The plaintiff may sue "Nurse X" and upon learning the nurse's name, substitute it for the fictitious party under Rule 9(h). *See* Miss. R. Civ. P. 9(h).
>
> However, where a plaintiff suspects that there might have been others involved in the procedure who might have been negligent, but is, at the time suit is filed, unaware of who they are or what negligent act they are alleged to have committed, the plaintiff may not include a fictitious party in the complaint. This Court has previously stated that "the purpose of Rule 9(h) is to provide a mechanism to bring in responsible parties, **known**, but unidentified, who can only be ascertained through the use of judicial mechanisms such as discovery." ***Ralph Walker, Inc. v. Gallagher***, 926 So. 2d 890, 896–97 (Miss. 2006) (emphasis added).

***Veal***, 955 So. 2d at 846–47 (emphasis in original).

¶23.  This Court consistently has applied the same reasoning that underlies ***Womble*** and

*Veal* to numerous Rule 9(h) cases. *See Rawson v. Jones*, 816 So. 2d 367, 369 (Miss. 2001) (citing *Doe v. Mississippi Blood Servs., Inc.*, 704 So. 2d 1016, 1019 (Miss.1997)) ("The purpose of Rule 9(h) is to provide a mechanism to bring in known, but unidentified, responsible parties who may only be ascertained through the use of judicial mechanisms such as discovery."); *Long v. Mem'l Hosp. at Gulfport*, 969 So. 2d 35, 42 (Miss. 2007) ("One of the benefits of Rule 9(h) is to allow a plaintiff, who is aware of his cause of action against a defendant but ignorant of the defendant's identity, to name a fictitious party as a defendant in order to use the court's resources to discover her true identity."); *Price v. Clark*, 21 So. 3d 509, 526 (Miss. 2009) ("[A]t the time the original complaint was filed, Price neither knew the identities of the parties, nor was she aware of any facts giving rise to any cause of action against such unknown individual or corporate entity; therefore, the trial court did not err in finding that Price's substitution did not comport with the purpose of Rule 9(h).").

¶24.    The *Veal* Court's holding was consistent with precedent for three primary reasons. First, the *Veal* Court correctly applied the plain and ordinary meaning of Rule 9(h).  As it recognized, "this Court is bound to follow the plain and ordinary meanings of the Rules of Civil Procedure."  *Veal*, 955 So. 2d at 845 (citing *Poindexter v. Southern United Fire Ins. Co.*, 838 So. 2d 964, 971 (Miss. 2003) and *Van Meter v. Alford*, 774 So. 2d 430, 432 (Miss. 2000)).

¶25.    Second, a close examination of *Womble*'s rule statement reveals the meaning in the statement "that ignorance of the opposing party for fictitious party practice extends beyond

14

mere lack of knowledge of the opposing party's name." ***Womble***, 618 So. 2d at 1267. The

***Womble*** Court already had noted the "dearth of Mississippi law on the application of Rule

9(h)" before it cited ***Garrett*** and ***Epsey*** to explain the rule. ***Id***. (citing ***Garrett***, 66 Cal. Rptr.

at 592, and ***Epsey***, 429 So. 2d at 958–59). Both ***Garrett*** and ***Epsey*** support the proposition

that a plaintiff may actually know the true name of an entity but still be ignorant of the

entity's name under the fictitious-party rule, where the plaintiff does not know the facts

necessary to realize the true name of the entity that is liable. *See supra*, fn. 6, 7; ***Garrett***, 66

Cal. Rptr. at 592; ***Epsey***, 429 So. 2d at 958–59. A number of factual scenarios exist in which

this principle might apply.

¶26.    Third, the ***Womble*** Court found that Rule 9(h) did not apply to the facts before it.

***Womble***, 618 So. 2d at 1267. While it is unnecessary to determine if ***Womble's*** analysis is

dictum, even the heirs in ***Womble*** "admit[ted] that no fair construction of the pleadings

would lead to the conclusion that Dr. Calhoun was identified, even as a John Doe." ***Id***.; *see*

***Collins by Smith v. McMurry***, 539 So. 2d 127, 130 (Miss. 1989) ("[T]his Court has held on

more than one occasion that a statement which qualifies as dictum does not have a binding

effect."). In light of our analysis, we reaffirm ***Veal*** and decline to find that it was an

improper departure from our precedent.

### B.    Application of Rule 9(h)

¶27.    The present question under Rule 9(h) is whether or not Hammons's original complaint

identified a cause of action against a fictitious party whose real name Hammons later

15

substituted in his amended complaint. Rule 9(h) allows a party who "is ignorant of the name of an opposing party" to state so in the complaint and later amend the complaint when the party's "true name is discovered." M.R.C.P. 9(h). Rule 9(h) grants a party the authority to amend only "by substituting the true name" of the fictitious party. *Id.* Inherent within a Rule 9(h) claim against a fictitious party is an actual claim against *that* party.

¶28. Here, though, it is clear from the record that Hammons did not make any claim against any fictitious defendant in his original complaint. *See Price*, 21 So. 3d at 526; *Veal*, 955 So. 2d at 846. His original complaint admitted as much:

> Defendants, A–P, are corporations or persons whose true identities and addresses are unknown at this time and whose liability to the Plaintiff is unknown at this time. Plaintiff will amend his Complaint and include the true names and addresses of the Defendants A–P once their identities are learned and once their liabilities are ascertained.

Hammons's sole theory of liability in his original complaint was that Scott Petroleum supplied defective fuel. Further, Hammons was clear in his original allegations that the defective fuel was defective at the point that it left Scott Petroleum's control and was used to fuel the aircraft in the same defective state. No other allegations were made in the original complaint against any other party.

¶29. Further, Hammons's allegations in the amended complaint were the first allegations against the fictitious parties and directly contradicted his original theory of the case.[8] In the

---

[8] Hammons needed an additional fifteen pages to explain the new allegations against Navarre, Velcon, Knappco and Wilden. The original complaint was eleven pages; the amended complaint was twenty-six pages.

original complaint, all of the liability was cast upon Scott Petroleum, and there was no implication or hint that the fuel may have been affected by the fuel truck. Hammons, through the amended complaint, though, alleged that Scott Petroleum "certified that the fuel pumped into the Aircraft was safe, not defective and not unreasonably dangerous." He then alleged the new claim that the fuel was contaminated by Navarre, Velcon, Knappco and Wilden after it left Scott Petroleum's control.

¶30. "[A]t the time the original complaint was filed, [Hammons] neither knew the identities of the parties, nor was []he aware of any facts giving rise to any cause of action against such unknown individual or corporate entity." *Price*, 21 So. 3d at 526. Thus, Hammons's alleged substitutions in his amended complaint "simply attempted to substitute newly discovered defendants for the previously named fictitious parties." *Veal*, 955 So. 2d at 846. Such an amendment is not contemplated under Rule 9(h). Rule 9(h) does not provide authority for a party to join a fictitious party without knowing whether or not the party that is joined is liable. Thus, Hammons—who admitted that the alleged fictitious defendants' "liability to the Plaintiff is unknown at this time"—did not join any fictitious parties to his suit by means of the original complaint. Navarre, Velcon, Knappco and Wilden were named to the suit, for the first time, by Hammons's amended complaint.

¶31. Thus, Hammons failed to properly name any fictitious defendants in his original complaint. We now turn to the application of the statute of limitations.

17

**II. Statute of Limitations**[9]

¶32.    Hammons's claims are governed by the three-year statute of limitations. Miss. Code Ann. § 15–1–49 (Rev. 2012). Section 15–1–49 provides, in part:

> (1) All actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after.

> (2) In actions for which no other period of limitation is prescribed and which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury.

Miss. Code Ann. § 15–1–49.

¶33.    Hammons crashed on October 25, 2009. Hammons filed his amended complaint against Navarre, Velcon, Knappco and Wilden on April 30, 2013. As just over three years and six months had passed between the crash and Hammons's amended complaint, the amended complaint was filed outside the three-year statute of limitations. Under Section 15–1–49, these claims are time-barred unless the claims relate back to the date of filing of the original complaint, the cause of action had not accrued or the statute of limitations was tolled.

¶34.    As already recognized, Rule 15(c)(2) notes that "[a]n amendment pursuant to Rule 9(h) . . . relates back to the date of the original pleading." M.R.C.P. 15(c)(2). Hammons's

---

[9] Judge Wilson wrote a well-reasoned analysis of the statute-of-limitations issue for the Court of Appeals, from which we borrow heavily. *Hammons*, 2017 WL 1392835, at **9–10.

18

addition of new parties, though, was not an amendment pursuant to Rule 9(h) and does not relate back to the date of filing of his original complaint.

¶35. Hammons also argues that his cause of action against Navarre, Velcon, Knappco and Wilden did not accrue until he discovered their identities and their alleged wrongful conduct. This argument, though, is contrary to the plain language of Section 15–1–49: "In actions . . . which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered . . . the injury." Miss. Code Ann. § 15–1–49(2). The cause of action accrues upon the discovery of the injury. This is not a case that would implicate subsection two of Section 15–1–49. Hammons's injury was known to him immediately.

¶36. Even if subsection two did apply, this Court has addressed this issue directly, as the Court of Appeals recognized. *See* ***Angle v. Koppers Inc.***, 42 So. 3d 1, 5 (Miss. 2010) ("[T]he plain language of the statute supports [the] argument that the cause of action accrued upon discovery of the injury, *not discovery of the injury and its cause*.") (emphasis in original). We recently reaffirmed ***Angle****'s* holding. ***City of Tupelo v. O'Callaghan***, 208 So. 3d 556, 569 (Miss. 2017) (citing ***Angle***, 42 So. 3d at 5–7).

¶37. Hammons's final argument is that the statute of limitations was tolled by Mississippi Code Section 15–1–63, which provides:

> If, after any cause of action has accrued in this state, the person against whom it has accrued be absent from and reside out of the state, the time of his absence shall not be taken as any part of the time limited for the commencement of the action, after he shall return.

Miss. Code Ann. § 15-1-63 (Rev. 2012). In ***Sullivan v. Trustmark National Bank***, this

Court stated that this provision

> require[s] that a plaintiff seeking to benefit from it must have been unable to effect service on the defendant for the period which it is claimed that the statute is tolled. That is, the defendant must have left the state and not be amenable to service under a long-arm statute or other means, because for example, his whereabouts are unknown. The period of time that the defendant's whereabouts are unknown is deducted from the period of the statute which would otherwise have run, in effect, adding that time to the statute of limitations. However, the statute of limitations is not tolled where the plaintiff knew or should have known of the defendant's whereabouts. The burden of proof that the defendant was absent and not amenable to service is on the plaintiff.

*Sullivan v. Trustmark Nat'l Bank*, 653 So. 2d 930, 931–32 (Miss. 1995) (citations omitted).

¶38.    According to Hammons, Section 15–1–63 tolled the limitations period simply because it allegedly was impossible for him to discover the identities of the added defendants. As the Court of Appeals noted, Section 15–1–63 *never* has been applied to toll the statute of limitations where a plaintiff cannot discover the identity of a defendant. Further, Hammons provided no evidence that the added defendants were not amenable to service. In fact, he promptly served or attempted service on them after he filed the amended complaint.[10]

¶39.    We recognize the finality of our decision today for Hammons. Hammons, though, was not without recourse under our law. Hammons could have amended his complaint to

---

[10] It is settled law that we review statute-of-limitations issues de novo. *McAdams*, 171 So. 3d at 508. Thus, Hammons's argument that the circuit court did not consider his arguments concerning the statute of limitations and that he is entitled to remand on the issue is without merit. We also find no support for Hammons's claim. The circuit court did not specifically detail each of Hammons's arguments in its analysis—focusing on Rules 9 and 15, but it clearly determined that the claim was time-barred.

allege a cause of action to hold liable the fictitious defendants before the statute of limitations ran.[11] On May 26, 2011, the NTSB publicly adopted the final report of the crash. This was only one year and seven months after the accident on October 25, 2009. While no claim is in the record that the NTSB report was not publicly available on May 26, 2011, Hammons's counsel (who, according to his affidavit, primarily practices in airplane and helicopter crash litigation) admitted that he received the NTSB report on April 6, 2012. This was approximately two years and five months after the accident. The NTSB report revealed information about the fuel truck and its mechanisms that clearly contradicted the sole theory of liability in Hammons's original complaint. There is no evidence in the record or any allegation before us that Hammons, after reviewing the NTSB report, could not have

---

[11] Hammons of course argues that he already had preserved these claims by means of his original complaint. As discussed, however, in his original complaint, Hammons admitted that he did not know if the alleged fictitious defendants even were liable to him. With the statute of limitations looming, Hammons did nothing to bring claims against the alleged fictitious defendants. Instead, he allowed the statute of limitations to expire on his claims without amending his complaint to inform the Court that the fictitious defendants actually were liable to him. Nothing in the law required Hammons to know every detail of his theory of liability against the fictitious defendants. Mississippi long has recognized pleading in the alternative. *See* M.R.C.P. 8(a), (e)(2) ("A party may set forth two or more statements of a claim or defense alternatively or hypothetically. . . ."). The law, though, did require Hammons actually to bring a cause of action before the statute of limitations expired. Further, Hammons simply could have added additional defendants to his lawsuit. *See* M.R.C.P. 21. Nothing in our holding today limits the types of claims or the number of claims available to a party under the Rules of Civil Procedure. A party may toll the statute of limitations against a fictitious party by bringing a known claim against the fictitious party. Otherwise, a party simply must add another party under Rule 21. M.R.C.P. 21. Any claims against new parties joined not only would be subject to the statute of limitations—including any claim of tolling—but likewise would have available to them any defenses under the statute of limitations as well.

21

amended his complaint to allege a theory of liability against the fictitious defendants to preserve his claims against them.

## CONCLUSION

¶40.    Hammons's original complaint did not name any fictitious defendants within the meaning of Rule 9(h).  As such, he actually named Navarre, Velcon, Knappco and Wilden for the first time in his amended complaint; thus, the amendment did not relate back to the time of filing of the original complaint.  Further, the claims against Navarre, Velcon, Knappco and Wilden—made three years and six months after the injury in this case—are barred by the statute of limitations.  Therefore, we affirm the judgment of the circuit court and the decision of the Court of Appeals.

¶41.    **AFFIRMED.**

**WALLER, C.J., RANDOLPH, P.J., COLEMAN, MAXWELL AND BEAM , JJ., CONCUR.  KITCHENS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, J.  ISHEE, J., NOT PARTICIPATING.**

**KITCHENS, PRESIDING JUSTICE, DISSENTING:**

¶42.    I respectfully dissent. I would find that the amended complaint filed by Robert Hammons, Jr., properly made substitutions for fictitious parties under Mississippi Rule of Civil Procedure 9(h). Therefore, I would reverse and remand the case to the circuit court for further proceedings, including a determination of whether Hammons exercised reasonable diligence in identifying Navarre, Velcon, Knappco, and Wilden for the purposes of relation back under Mississippi Rule of Civil Procedure 15(c)(2).

22

¶43.    Rule 9(h) provides:

> **(h) Fictitious Parties.** When a party is ignorant of the name of an opposing party and so alleges in his pleading, the opposing party may be designated by any name, and when his true name is discovered the process and all pleadings and proceedings in the action may be amended by substituting the true name and giving proper notice to the opposing party.

M.R.C.P. 9(h). We have held that "[t]he purpose of Rule 9(h) is to provide a mechanism to bring in responsible parties, known, but unidentified, who can only be ascertained through the use of judicial mechanisms such as discovery." *Doe v. Miss. Blood Servs.*, 704 So. 2d 1016, 1019 (Miss. 1997).

¶44.    In *Womble v. Singing River Hospital*, 618 So. 2d 1252, 1267 (Miss. 1993), *overruled on other grounds*, this Court discussed Rule 9(h) and expressed that:

> There is a dearth of Mississippi law on the application of Rule 9(h). It is a principle of general application, though, that ignorance of the opposing party for fictitious party practice extends beyond mere lack of knowledge of the opposing party's name. *Even if the plaintiff knows the true name of the person, he is still ignorant of his name if he lacks knowledge of the facts giving him a cause of action against . . . that person. See, e.g.,* **Br[e]ceda v. Gamsby**, 267 Cal. App. 2d 167, 72 Cal. Rptr. 832 (1968); **Columbia Engineering v. Epsey**, 429 So. 2d 955 (Ala. 1983).

*Id.* (emphasis added). In *Doe v. Mississippi Blood Services*, we expanded on *Womble* and held that, because of the relation-back privilege in Rule 9, a plaintiff seeking to amend the complaint must have exercised reasonable diligence to discover the identities of the fictitious parties. *Doe*, 704 So. 2d at 1019. As outlined below, *Womble* and *Doe* have provided the standard used in numerous subsequent cases to determine issues of fictitious party practice.

¶45.    But in *Veal v. J.P. Morgan Trust Co.*, 955 So. 2d 843, 846 (Miss. 2007), this Court,

23

without citing *Womble*, articulated that:

> Rule 9(h) authorizes the plaintiff to deviate in only one respect from the requirements of the Mississippi Rules of Civil Procedure in bringing a claim. That is, the plaintiff is allowed to use a fictitious name, rather than the true name of the defendant. *In other words, the purpose of Rule 9(h) is to allow a plaintiff to proceed with a lawsuit where the plaintiff knows and can articulate the wrongful conduct of, and claims against, the fictitious party, but simply does not know that party's name.*

*Id.* (emphasis added).

¶46. It is plain that, under *Womble* and *Doe*, a plaintiff successfully can bring a claim against a fictitious party even if the plaintiff lacks knowledge of the facts giving rise to a cause of action against that party, and amendment will be allowed if the plaintiff exercised reasonable diligence to discover the party's identity. *Womble*, 618 So. 2d at 1267; *Doe*, 704 So. 2d at 1019. But *Veal* allows substitution only if the plaintiff is fully cognizant of the claim against the unknown party but ignorant of the party's name. I would find that *Womble* and *Veal* provide two different standards for fictitious party practice under Rule 9(h). The majority dispenses with the *Womble* standard and applies the standard from *Veal*. I would find that the rules from *Womble* and *Doe* are controlling, and that, because Hammons's original complaint and his amended complaint both alleged the same general theory, that the accident was caused by defective fuel, his amended complaint satisfied the fictitious party pleading requirements of Rule 9(h). The only remaining inquiry is whether Hammons exercised reasonable diligence in discovering the identities of the fictitious parties.

¶47. As Judge Greenlee rightly observed in his dissent for the Court of Appeals, the courts

24

of Mississippi have relied most frequently on the Rule 9(h) standard announced by *Womble*. *Price v. Clark*, 21 So. 3d 509, 526 (Miss. 2009); *Rawson v. Jones*, 816 So. 2d 367, 369 (Miss. 2001); *Doe v. Miss. Blood Servs., Inc.*, 704 So. 2d 1016, 1018-19 (Miss. 1997); *Davenport v. Hertz Equip. Rental Corp.*, 187 So. 3d 194, 199 (Miss. Ct. App. 2016); *Turnage v. McConnell Tech.*, No. 16-60291, 2016 WL 7209719, at \*2 (5th Cir. Dec. 12, 2016); *Pruitt v. Invacare Corp.*, No. 2:13CV293-TSL-JCG, 2014 WL 5465342, at \*5 (S.D. Miss. Oct. 28, 2014); *Scoggins v. Boston Scientific Corp.*, No. 2:08CV032-P-A, 2008 WL 1821498, at \*\*2-3 (N.D. Miss. Apr. 22, 2008). As Judge Greenlee noted, the *Womble* standard has been employed as the prevailing rule even after our decision in *Veal*.

¶48.    Moreover, the rule from *Womble* fully comports with the relation-back provisions of Rule 9(h) and Rule 15(c). For relation back under Rule 15(c), the claim or defense must have arisen "out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." M.R.C.P. 15(c). Because an amendment under Rule 9(h) does not change the party against whom a claim is asserted, such an amendment automatically relates back. M.R.C.P. 15(c)(2). Under *Womble*, "[e]ven if the plaintiff knows the true name of the person, he is still ignorant of his name if he lacks knowledge of the facts giving him a cause of action against [] that person." *Womble*, 618 So. 2d at 1267. I observe that this language came almost *verbatim* from *Breceda v. Gamsby*, 267 Cal. App. 2d 167, 174, 72 Cal. Rptr. 832, 837-38 (1968). *Breceda* also explained that "[a] defendant unaware of the suit against him by a ficti[t]ious name is in no worse position if, in addition to substituting his true name,

25

the amendment makes other changes in the allegations on the basis of the same general set of facts." *Id.* (quoting *Austin v. Mass. Bonding & Ins. Co.*, 364 P.2d 681, 684 (Cal. 1961)).

¶49. Turning to this case, I would find that Hammons's original complaint sufficiently set forth claims against the appellees. Under *Womble*, Hammons was not required to allege all the facts giving him a cause of action against the unknown parties to satisfy Rule 9(h). A comparison of Hammons's original complaint with the amended complaint reveals that both complaints were founded on the same theory and general set of facts: that a fuel defect caused the injurious helicopter crash. The theory underlying Hammons's original complaint was that "the fuel pumped into the Aircraft in question was defective and unreasonably dangerous." In his amended complaint, Hammons continued to maintain this theory, claiming that "[t]he fuel pumped into the accident Aircraft was defective and unreasonably dangerous and/or was rendered defective and/or unreasonably dangerous because of the actions or non actions of [the defendants]." Thus, as recognized by Judge Greenlee in his dissenting opinion for the Court of Appeals, Hammons's original complaint alleged a claim for product liability for defective fuel, and his amended complaint continued to maintain a product liability claim based on defective fuel, although more detailed, against the appellees.

¶50. I recognize the majority's concern with the fact that Hammons's complaint says that the fictitious defendants "are corporations or persons whose liability to the Plaintiff is unknown at this time." Nonetheless, this Court has held that it is not bound by the literal language of the complaint and that substance must prevail over form. *Sanderson Farms, Inc.*

26

***v. McCullough***, 212 So. 3d 69, 74 (Miss. 2017). Substantively, Hammons maintained the same claim between his original and amended complaints. I would hold that, because Hammons's amended complaint asserted the same theory of liability, based on the same general facts, as his original complaint, it complied with Rule 9(h). However, because the trial court never considered whether Hammons exercised reasonable diligence to identify the fictitious parties, I would reverse and remand for a determination on this issue.

  **KING, J., JOINS THIS OPINION.**