# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-IA-00635-SCT

*THE PEOPLES BANK OF BILOXI, MISSISSIPPI*

*v.*

*JOHN McADAMS, IN HIS OFFICIAL CAPACITY AS CHANCERY CLERK OF HARRISON COUNTY, MISSISSIPPI AND AS GUARDIAN OF SYBIL BOWDEN AND JONATHAN DUNN*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/21/2014 |
| TRIAL JUDGE: | HON. RICHARD W. McKENZIE |
| TRIAL COURT ATTORNEYS: | NATHAN LAMAR PRESCOTT |
| | LAUREN REEDER McCRORY |
| | LAUREN RUTH HILLERY |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | NATHAN LAMAR PRESCOTT |
| | LAUREN REEDER McCRORY |
| ATTORNEYS FOR APPELLEE: | LAUREN RUTH HILLERY |
| | DONALD C. DORNAN, JR. |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND RENDERED - 08/06/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, P.J., KING AND COLEMAN, JJ.**

**RANDOLPH, PRESIDING JUSTICE, FOR THE COURT:**

¶1. John McAdams, in his official capacity as Chancery Clerk of Harrison County (hereinafter referred to as the Chancery Clerk), was appointed guardian of Sybil Bowden and Jonathan Dunn. The Chancery Clerk filed suit against The Peoples Bank of Biloxi, Mississippi (hereinafter referred to as the Bank), alleging gross negligence, negligence, and conversion of a negotiable instrument. The Bank pleaded that the statute of limitations had

run on these claims and filed a motion for summary judgment. The trial court denied the motion. The Bank petitioned this Court and was granted leave to file this interlocutory appeal.  See M.R.A.P. 5.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

¶2.    In October 2003 the Chancery Clerk opened guardianship accounts for Jonathan Dunn and Sybil Bowden at Peoples Bank. Woodrow W. "Woody" Pringle III served as the Chancery Clerk's attorney. The Chancery Clerk was the sole signatory on both accounts. In opening the accounts, the Chancery Clerk signed a deposit agreement, which stated, *inter alia*:

> **Statements**–You must examine your statement of account with "reasonable promptness." If you discover (or reasonably should have discovered) any unauthorized payments or alterations you must promptly notify us of the relevant facts.
> . . .
> You further agree that if you fail to report any unauthorized signatures, alterations, forgeries or any other errors in your account within 60 days of when we make the statement available, you cannot assert a claim against us on any items in that statement, and the loss will be entirely yours.

¶3.    On January 24, 2005, Pringle closed the Bowden guardianship, without any authority to do so. The Bank issued Pringle a cashier's check payable to Bowden and Pringle, jointly, in the amount of $6,609.40. Pringle forged Bowden's signature, cashed the check, and retained the funds for himself. The Bank, through its custodian of records, offered evidence that it sent a statement to the Chancery Clerk's office on January 31, 2005, revealing this closure and disbursement at the address listed on the form opening the account: "Sybil

2

Bowden Guardianship, by John McAdams Guardian, PO Drawer CC, Gulfport, MS 39502-0860."

¶4.    The Dunn account required a court order before disbursements could be made. On June 11, 2008, Pringle presented what purported to be a court order[1] authorizing the disbursement of $30,000 payable to Victoria Dunn (Dunn's mother) and Pringle's trust account. The Bank issued a cashier's check in accordance with the order. On the forged endorsement of Victoria Dunn, Pringle cashed the check and retained the funds for himself. On March 25, 2009, Pringle wrote a check for $8,000 on the Dunn Guardianship account payable to himself and Jonathan Dunn. The check purports to be signed by the Chancery Clerk and endorsed by Dunn, but both signatures are now alleged to be forgeries. The Bank paid the check, in the absence of a court order.

¶5.    The Bank, through its custodian of records, offered evidence that it sent a statement to the Chancery Clerk's office on June 30, 2008, revealing the $30,000 disbursement at the address listed on the form opening the account: "Harrison Cty Chancery Clerk, Jonathan A Dunn Guardianship, John McAdams Guardian, PO Drawer CC, Gulfport, MS 39502-0860." In like manner, the Bank offered evidence that it sent a statement to the Chancery Clerk on March 31, 2009, revealing the $8,000 disbursement to the same address.

¶6.    By affidavit filed in this matter, the Chancery Clerk claims he never received these Bank statements, because "Pringle obtained possession of any bank statements received in

---

[1] This order does not appear in the record, but its existence is not disputed. During arguments on the motion for summary judgment, the trial court asked plaintiff's counsel for an explanation for why the order was "fraudulent.""[S]omehow Woody Pringle was able to go and bring an order to a judge and get him to sign it, without any kind of motion or without anything else." The order was not certified. While the order purportedly bears Judge Steckler's signature, even he cannot verify if he signed it or not.

the Court Department and took them to his office." The Chancery Clerk does not know whether the Bank mailed the statements or not. In January 2011 the Chancery Clerk requested and obtained these statements from the Bank after discovering Pringle's embezzlement scheme in other cases in December of the previous year.

¶7. On May 8, 2013, the Chancery Clerk filed his Complaint on behalf of the guardianships against the Bank, asserting negligence, gross negligence, and conversion of a negotiable instrument. The Bank responded with a motion for summary judgment, claiming the Chancery Clerk's claims were time-barred by both the deposit agreement and Mississippi law.

¶8. The trial court heard oral arguments on the motion. The trial court entered an order denying Peoples Bank's motion for summary judgment. The Bank petitioned this Court for permission to submit an interlocutory appeal which was granted. This interlocutory appeal duly followed.

**ISSUES**

¶9. Peoples Bank raises the following four issues relating to the trial court's denial of its motion for summary judgment:

I. **Whether the Chancery Clerk's claims are time-barred by the sixty-day notice provision contained in each account's deposit agreement that the Chancery Clerk executed.**

II. **Whether the Chancery Clerk's claims are time-barred pursuant to Miss. Code Ann. §75-4-406(f) which imposes a one-year notice provision after the statement is made available to the customer.**

4

**III.** **Whether the Chancery Clerk's claims for conversion of a negotiable instrument are time-barred by the three-year statute of limitations contained in Miss. Code Ann. §75-3-118.**

**IV.** **Whether the Chancery Clerk's negligence and gross negligence claims are time-barred by the three-year statute of limitations contained in Miss. Code Ann. §15-1-49.**

Finding that the three-year statute of limitations has run, rendering the other arguments moot, this Court will address only the three-year statutes of limitation.

## ANALYSIS

¶10. When considering issues of law, such as statutes of limitations, this Court employs a *de novo* review. ***Andrus v. Ellis***, 887 So. 2d 175, 179 (Miss. 2004). When reviewing a trial court's grant or denial of a motion to dismiss or a motion for summary judgment, this Court likewise applies a *de novo* standard of review.

***Whitaker v. Limeco Corp.***, 32 So. 3d 429, 433-34 (Miss. 2010).

The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If, in this view, there is no genuine issue of material fact and, the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise, the motion should be denied.

***Leslie v. City of Biloxi***, 758 So. 2d 430, 431-32 (Miss. 2000).

¶11. The Chancery Clerk filed claims of conversion of a negotiable instruments, which have a three-year statute of limitations under Mississippi Code Section 75-3-118, and negligence/gross negligence claims which have a three-year statute of limitations under Mississippi Code Section 15-1-49.

¶12. Section 75-3-118(g) reads, in pertinent part, "Unless governed by other law regarding claims for indemnity or contribution an action (I) for conversion of an instrument, for money

5

had and received, or like action based on conversion . . . must be commenced within three (3) years after the cause of action accrues." Notably absent from this section is any provision for a "discovery rule." Section 15-1-49, in providing a three-year statute of limitations for all actions for which no statute of limitations is elsewhere provided, does contain a "discovery rule." "In actions for which no other period of limitation is prescribed and which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury." Miss. Code Ann. §15-1-49(2)(Rev. 2012).

*I.    Has the three-year statute of limitations for conversion of a negotiable instrument run?*

¶13.    The Chancery Clerk filed his complaint May 8, 2013. In Count II, addressing his claims for conversion, he alleges the Bank "is liable for converting the negotiable instruments from Dunn's guardianship account."[2] The $30,000 disbursement from the Dunn account occurred on June 11, 2008; the $8,000 disbursement occurred on March 25, 2009. More than four years elapsed from the time of these transactions to the time the Chancery Clerk filed his claim, outside the three-year statute of limitations.

¶14.    The Chancery Clerk asserts all his claims are saved by the "discovery rule" provision of Section 15-1-49(2). Not only is this argument betrayed by a plain reading of the statutes as outlined above, it is contrary to this Court's precedent. In ***Smith v. Franklin Custodian Funds, Inc.***, 726 so. 2d 144, 148 (Miss. 1998), this Court stated, unequivocally,

---

[2] The Chancery Clerk does not assert a conversion claim regarding the Bowden Guardianship.

6

We hold today that the rule adopted by a majority of our sister jurisdictions[3] is sound and should be applied in our jurisprudence. We therefore hold that the discovery rule is inapplicable in actions involving conversion of negotiable instruments unless the defendant asserting the statute of limitations is involved in the fraudulent concealment.

¶15.    In *Smith,* a son, acting as his parents' financial advisor, liquidated the securities of his parents without their knowledge and concealed his actions from them. *Id.* at 146. In 1987, Franklin Funds issued a check to the parent-company of a subsidiary for which the son worked.  *Id.* The son obtained the check, forged his parents' signatures, and retained the funds for himself. *Id.* The parents discovered his acts in 1993 and subsequently brought suit. *Id.* The Court applied the new rule to find the discovery rule inapplicable. *Id.* at 147-48, 151.

¶16.    Here, the Chancery Clerk concedes the Bank was not involved in Pringle's fraudulent concealment. Because the Bank was not involved in the fraudulent concealment, the discovery rule does not toll the statute of limitations for the conversion claims. As such, this Court finds that the trial court improperly denied the Bank's motion for summary judgment on this issue, finding *Smith*, *supra*, to be controlling.

II.      *Has the three-year statute of limitations for negligence/gross negligence run?*

---

[3] Citing ***Menichini v. Grant***, 995 F.2d 1224, 1229 (3d Cir.1993); ***Husker News Co. v. Mahaska State Bank***, 460 N.W.2d 476 (Iowa 1990); ***Kuwait Airways Corp. v. American Sec. Bank***, 890 F.2d 456, 460-63, 466 (D.C. Cir.1989); ***First Investors Corp. v. Citizens Bank, Inc.***, 757 F. Supp. 687, 690-92 (W.D.N.C. 1991), *aff'd mem.*, 956 F.2d 263, 1992 WL 36812 (4th Cir.1992); ***Wang v. Farmers State Bank of Winner***, 447 N.W.2d 516, 518-19 (S.D. 1989); ***Southwest Bank & Trust Co. v. Bankers Commercial Life Ins. Co.***, 563 S.W.2d 329, 331-32 (Tex. Civ. App. 1978); ***Gerber v. Manufacturers Hanover Trust Co.***, 64 Misc. 2d 687, 315 N.Y.S.2d 601, 603 (1970).

7

¶17. The Chancery Clerk filed his complaint May 8, 2013. The three transactions at issue occurred on January 24, 2005; June 11, 2008; and March 25, 2009. As with the conversion claims, the most recent transaction occurred more than four years before the filing of the complaint–well outside the three-year statute of limitations. However, negligence/gross negligence claims are subject to the "discovery rule" of Section 15-1-49(2), essentially that "the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury."

¶18. "The question of whether a statute of limitations is tolled by the discovery rule often turns on the factual determination of 'what the plaintiff knew and when.'" ***Stringer v. Trapp***, 30 So. 3d 339, 342 (Miss. 2010) (quoting ***Huss v. Gayden***, 991 So. 2d 162, 168 (Miss. 2008)). Thus, "'[o]ccasionally the question of whether the suit is barred by the statute of limitations is a question of fact for the jury; however, as with other putative fact questions, the question may be taken away from the jury if reasonable minds could not differ as to the conclusion.'" ***Stringer***, 30 So. 3d at 342 (quoting ***Smith v. Sanders***, 485 So. 2d 1051, 1053 (Miss. 1986)).

¶19. The Bank offered evidence that it sent statements to the Chancery Clerk concerning these transactions on the last day of each month. The Chancery Clerk offered no proof to dispute the Bank's assertion, although he claims he never received a Bank statement[4] because Pringle removed the Bank statements delivered to the Chancery Clerk.

---

[4] This means the Chancery Clerk never received a Bank statement for more than eight years from January 24, 2005, the Bowden transaction–until filing suit May 8, 2013.

8

¶20.     In *Union Planters Bank, N.A. v. Rogers*, 912 So. 2d 116, 117-18 (Miss. 2005), a

housekeeper forged numerous checks of her employers. The employers (Rogers and her

husband) sued the Bank for conversion and negligence. *Id.* Rogers failed to inspect the bank

statements because the housekeeper took them in order to conceal her scheme. *Id.* at 121-22.

The Court found this concealment to be of no consequence:

> A reasonable person who has not received a monthly statement from the Bank
> would promptly ask the Bank for a copy of the statement. Here, Rogers claims
> that she did not receive numerous statements. We find that she failed to act
> reasonably when she failed to take any action to replace the missing
> statements.

*Id.* at 122.

¶21.     Four years, one month, and eight days elapsed between the time the most recent

statement became available March 31, 2009 and the time the Chancery Clerk filed suit May

8, 2013. He did not request statements from the Bank until January 20, 2011.[5] According to

*Union Planters*, he should have asked the Bank for a copy, but he failed to take any action

to replace the missing statements. Had he asked the Bank for a copy of the missing

statements, he could have discovered Pringle's fraudulent scheme and any alleged negligence

on the part of the Bank.

¶22.     The statute-of-limitations issue is not  a question of fact because reasonable minds

could not differ, in light of *Union Planters*, that the Chancery Clerk lacked diligence in

failing to obtain and review any account statements for more than a year and a half on one

account and more than eight years on the other. *Stringer*, 30 So. 3d at 342. Based on the

_____

[5] This means the Chancery Clerk waited one year, nine months, twenty days before
requesting the most recent account statement.

9

record before us, the trial court erred in refusing to grant Peoples Bank's motion for summary judgment because the Chancery Clerk's claims are barred by the applicable statutes of limitation.

## CONCLUSION

¶23.   The circuit court erred in refusing to grant Peoples Bank's motion for summary judgment because McAdams's claims have expired due to the running of the applicable three-year statutes of limitation. Therefore, the Harrison County Circuit Court's denial of the Peoples Bank's motion for summary judgment is reversed, and judgment is rendered for the Peoples Bank.

¶24.   **REVERSED AND RENDERED.**

**WALLER, C.J., DICKINSON, P.J., LAMAR, KITCHENS, CHANDLER, PIERCE, KING AND COLEMAN, JJ., CONCUR**.