KITCHENS, PRESIDING JUSTICE, DISSENTING:
¶15. I respectfully dissent. The rule remains in this state that the issue of when the plaintiff knew or should have known of an injury for the purposes of the discovery rule is a fact question for the jury. Peoples Bank of Biloxi v. McAdams , 171 So.3d 505, 509 (Miss. 2015). Only when reasonable minds could not differ on the conclusion may the question be taken away from the jury and determined by the court. Id. at 509-10. While it does appear from the majority's recitation of the facts that no reasonable minds could differ on when Ted Stringfellow discovered his injury, the facts of this case are significantly less clear than represented by the majority opinion. Because genuine issues of material fact exist, a jury should determine whether Stringfellow knew or should have known of his injury before September 26, 2013.
¶16. On September 26, 2016, Stringfellow filed his complaint claiming injuries of "complicated silicosis and silica related conditions, caused by exposure to respirable crystalline silica while working as a sandblaster throughout Mississippi, Alabama, Florida, and Georgia." Mississippi Code Section 15-1-49(2) establishes when *176 the three-year statute of limitations began to run in Stringfellow's case. The statute provides that, "[i]n actions for which no other period of limitation is prescribed and which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury." Miss. Code Ann. § 15-1-49(2) (Rev. 2012). This Court has held that, under the plain language of the statute, a cause of action accrues upon discovery of the injury, not discovery of the injury and its cause. Angle v. Koppers, Inc. , 42 So.3d 1, 5 (Miss. 2010).[1]
¶17. A latent injury is one that is "undiscoverable by reasonable methods." PPG Architectural Finishes, Inc. v. Lowery , 909 So.2d 47, 51 (Miss. 2005). The question of when the plaintiff discovered or should have discovered a latent injury is fact-intensive, requiring an examination of what the plaintiff knew and when. McAdams , 171 So.3d at 509. The Court has held that some plaintiffs might not with reasonable diligence discover an injury until reviewing medical records, while others may discover an injury through personal observation and experience. Lowery , 909 So.2d at 51. A plaintiff's receipt of medical attention for side effects and symptoms can confirm that the plaintiff knew of an injury. Id. When a genuine dispute exists, the issue of when the plaintiff "discovered, or by reasonable diligence should have discovered," the injury is a question of fact for the jury. Weathers v. Metro. Life Ins. Co. , 14 So.3d 688, 692 (Miss. 2009) (quoting Donald v. Amoco Prod. Co. , 735 So.2d 161, 167 (Miss.1999) ). On summary judgment, "[t]he moving party bears the burden to show that no genuine issue of material fact exists, and the evidence must be viewed in the light most favorable to the nonmovant." Thrash v. Deutsch, Kerrigan & Stiles, LLP , 183 So.3d 838, 842 (Miss. 2016).
¶18. I would hold that genuine issues of material fact exist on the question of when Stringfellow discovered, or with reasonable diligence should have discovered, his injury. In American Optical Corporation v. Rankin , this Court looked to the complaint to determine the injury claimed by the plaintiff, which was "lung disease and silica related conditions." Am. Optical Corp. v. Estate of Rankin , 227 So.3d 1062, 1074 (Miss. 2017). While I would not have found Rankin's silicosis claim to be time-barred, the Court disagreed, finding that, because Rankin had sought treatment for a chronic obstructive pulmonary disease and other lung conditions several years before filing the complaint, reasonable minds could not differ that he had knowledge of the injury outside the limitations period. Id.
¶19. Stringfellow's complaint seeks recovery for "complicated silicosis and silica related conditions, caused by exposure to respirable crystalline silica." Unlike Rankin, Stringfellow specifically alleged that complicated silicosis was his injury. Thus, this Court's inquiry must focus on when Stringfellow discovered or reasonably should have discovered his injury, complicated silicosis.
¶20. The medical records show that, in November 2007, Stringfellow visited a hospital for fluid in his abdomen caused by cirrhosis of the liver. At that time, he was not seeking treatment for a lung condition.
*177 A CT scan that included the lower lungs was performed and showed "lateral pleural effusions with a bibasilar interstitial pattern and mild mosaic perfusion," but it did not reveal silicosis. Stringfellow was not diagnosed with any lung condition in 2007. A March 2008 chest x-ray included with his medical records showed "reticular-nodular lung pattern of unknown chronicity," but did not mention silicosis.
¶21. In May 2008, Stringfellow went to the hospital complaining of a productive cough. A CT scan of his chest showed "[f]indings consistent with pneumoconiosis (such as silicosis or coal workers' pneumoconiosis ) or histoplasmosis. Correlation with patient's history is recommended." In this medical record, silicosis was cited by the radiologist as one of three possibilities. Nothing indicates that any whisper of the possibility of silicosis identified in the CT scan reached Stringfellow's ears.The radiologist recommended a review of Stringfellow's history. Ultimately, Stringfellow was not diagnosed with silicosis. Instead, Stringfellow received a diagnosis of bronchitis not otherwise specified; secondarily, he was diagnosed with painful respiration, other lung disease not elsewhere classified, cough, shortness of breath, diabetes, and liver disorder. He was prescribed an antibiotic for the bronchitis. While it was recommended that Stringfellow follow up with a pulmonologist, he claimed that he failed to do so because he no longer was experiencing symptoms. Because Stringfellow's diagnosis was bronchitis, not silicosis, a reasonable jury could find that his not having followed up with a pulmonologist for bronchitis does not render his silicosis claim untimely.
¶22. The medical records described above were submitted with Stringfellow's Social Security disability claim made in 2008. Again, those records do not contain a diagnosis of silicosis, and reasonable minds could differ on whether Stringfellow knew or should have known of his injury at the time those records were submitted. And the Social Security claim was for cirrhosis, anemia, and ascites, not for a lung condition.
¶23. Stringfellow also received treatment on March 10, 2013, for a debilitating stroke. During this visit, a chest x-ray showed "[b]ilateral hilar calcified granulomas consistent with previous granulomatous disease, which may represent old tuberculosis or MAC infection," and "[l]eft midlung atelectasis versus scarring." A hospital note said that a head and neck CT scan had shown "mediastinal and pulmonary findings consistent with previous granulomatous disease or sarcoid." A physician's handwritten note says that Stringfellow had worked in a shipyard for years and had a history of sandblasting and that he had chest x-ray findings consistent with silicosis ; another such note says that his chest x-ray was classical for silicosis, that he had a strong occupational exposure history and that the condition should be followed up. While his patient summary on discharge noted a secondary diagnosis of "silica pneumocon nec," his discharge instructions did not include a recommendation that he follow up with any medical care provider concerning possible silicosis. Again, nothing indicates that Stringfellow, who was undisputedly undergoing treatment for a debilitating stroke and was severely impaired neurologically, ever received this information about the condition of his lungs. After Stringfellow's hospital discharge four days after admission, he spent thirty-two days in a rehabilitation center recovering from his stroke. And his discharge instructions from the rehabilitation center did not include a recommendation that he seek treatment for his lungs. Nor did any of the physicians who treated him in the aftermath of the stroke mention silicosis or any lung problems. Stringfellow *178 finally was diagnosed with silicosis on October 7, 2014.
¶24. The evidence raises genuine issues of material fact about when Stringfellow discovered, or reasonably should have discovered, his claimed injury of "complicated silicosis and silica related conditions." Stringfellow's medical records show that the only lung condition for which he received treatment before 2014 was a productive cough and shortness of breath, which medical professionals informed him was bronchitis. While Stringfellow's medical records predating September 26, 2013, do contain the word "silicosis," genuine issues of material fact are present about when Stringfellow should be charged with knowledge of his claimed injury, complicated silicosis. This Court has not held that the statute of limitations on a silicosis claim begins to run at the first mention of silicosis in a medical record. Rather, what the patient knew or should have known is the relevant consideration in determining when the limitations period commenced. Considering the evidence in the light most favorable to Stringfellow, reasonable minds could differ on when Stringfellow knew or should have known of his claimed injury. I would affirm the trial court's denial of the defendants' motion for summary judgment.
KING, P.J., AND COLEMAN, J., JOIN THIS OPINION.

I continue to disagree vehemently with the Court's holding that a claim can accrue when the plaintiff knows of an injury but not its cause. See City of Tupelo v. O'Callaghan , 208 So.3d 556, 574 (Miss. 2017) (Kitchens, J., dissenting); Lincoln Electric Co. v. McLemore , 54 So.3d 833, 840 (Kitchens J., dissenting); Angle , 42 So.3d at 9 (Kitchens, J, dissenting). But because Angle is the relevant precedent of this Court, I apply it for purposes of my analysis of the timeliness of Stringfellow's complaint.