# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CA-00404-COA

ERIN BURNS AND SHAUN BURNS, CO-
EXECUTORS OF THE ESTATE OF KATHERYN
SUZANNE BURNS, DECEASED, AND ERIN
BURNS, INDIVIDUALLY

APPELLANTS

v.

BANCORPSOUTH BANK AND TRUSTMARK
CORPORATION

APPELLEES

| | |
|---|---|
| DATE OF JUDGMENT: | 04/08/2022 |
| TRIAL JUDGE: | HON. DAL WILLIAMSON |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANTS: | MARK K. TULLOS |
| ATTORNEYS FOR APPELLEES: | L. CLARK HICKS JR. WILLIAM 'TREY' JONES III CHRISTOPHER RAY FONTAN WILLIAM DEMENT DRINKWATER |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 11/21/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., McDONALD AND LAWRENCE, JJ.**

**LAWRENCE, J., FOR THE COURT:**

¶1.     Helen Patrick was hired as a caregiver for Katheryn Burns. During her care in 2017 and 2018, Helen allegedly stole large sums of money from Katheryn's accounts at Trustmark and BancorpSouth banks. Following Katheryn's death, on March 18, 2021, her beneficiaries, Erin Burns and Shaun Burns, as co-executors of her estate, and Erin, individually, filed suit against Trustmark Corporation, BancorpSouth Bank, and Helen to have the money returned to the accounts. Both banks filed motions to dismiss or for summary judgment, alleging the

complaint was filed outside the applicable statute of limitations. The circuit court granted the motions to dismiss as to all claims against BancorpSouth and all claims regarding six of seven checking transactions against Trustmark. Aggrieved, the beneficiaries appealed. Finding no error, we affirm.

## FACTUAL BACKGROUND

¶2. Helen Patrick served as a caregiver for Katheryn Burns, an elderly woman who lived in Laurel, Mississippi. At the time, Katheryn had bank accounts with BancorpSouth and Trustmark banks. Erin, Katheryn's niece, was a joint owner of the BancorpSouth account but lived in Georgia. Her brother Shaun, Katheryn's nephew, also lived in Georgia, and they were the only beneficiaries of Katheryn's estate. Katheryn died on June 18, 2018.

¶3. On March 28, 2018, a Trustmark employee allegedly contacted Erin and advised that the "bank had received an anonymous tip about suspicious activity on the Trustmark account." Upon closer inspection, it was discovered that Helen had withdrawn the following amounts from the account on the following dates:

**Trustmark checks:**

1. Check No. 3456 for $10,000 . . . . . . . . . December 4, 2017

2. Check No. 3413 for $10,000 . . . . . . . . . December 13, 2017

3. Check No. 3243 for $3,000 . . . . . . . . . February 1, 2018

4. Check No. 3244 for $2,000 . . . . . . . . . . February 9, 2018

5. Check No. 3612 for $128,000 . . . . . . . . February 9, 2018

2

6.	Check No. 3619 for $50,000 . . . . . . . . .	February 26, 2018

7.	Check No. 3646 for $900 . . . . . . . . . . . .	March 26, 2018

Erin immediately confirmed with Katheryn, who was still alive at the time of the discovery, that the checks were improperly written and cashed by Helen.

¶4.	Erin, aware of the forgeries to the Trustmark account, began to inspect the BancorpSouth account. She discovered that Helen had opened another BancorpSouth joint account in both her own name and Katheryn's name. Checks were written on Katheryn's account and deposited into the newly opened joint account. Those checks were made for the following amounts on the following dates:

**BancorpSouth checks:**

1.	Check No. 5194 for $200 . . . . . . . . . . . . December 29, 2017

2.	Check No. 5195 for $250 . . . . . . . . . . . . December 29, 2017

3.	Check No. 5196 for $1,100 . . . . . . . . . . December 30, 2017

4.	Check No. 5197 for $1,000 . . . . . . . . . . January 4, 2018

5.	Check No. 2388 for $73,000 . . . . . . . . . January 11, 2018

6.	Check No. 5199 for $138,000 . . . . . . . . January 11, 2018

¶5.	On March 18, 2021, Erin and Shaun filed suit against Trustmark, BancorpSouth, and Helen, alleging numerous causes of actions.[1] As to Helen, the complaint alleged that she was arrested on April 25, 2018, and gave an interview during which she admitted to converting

---

[1] Erin acted in her individual capacity and as a co-executor with Shaun.

"large sums" of Katheryn's money. The civil complaint alleged torts of conversion and fraud and causes of action for unjust enrichment and constructive trusts against Helen.[2]

¶6.    As to Trustmark and BancorpSouth, the plaintiffs alleged that both banks failed to "exercise reasonably commercial standards" and accordingly breached their contracts with Katheryn and the fiduciary duties they owed to her. The plaintiffs also alleged both banks were liable for negligence by failing to "prevent, detect and respond" to Helen's alleged forgeries. Further, the complaint alleged negligent hiring and supervision of employees of both banks, though the plaintiffs never alleged which employees were negligently hired or supervised.

¶7.    On June 21, 2021, Trustmark filed an answer to the complaint denying liability and a motion to dismiss or, alternatively, for summary judgment. The motion alleged that of the seven total checks Helen forged on Katheryn's account with Trustmark, only six were actually cashed. Check No. 3612 for $128,000 dated February 9, 2018, was never honored due to insufficient funds. Therefore, Katheryn lost no money from that check. Further, Trustmark alleged that all the checks were governed by the Uniform Commercial Code (UCC)[3] and barred by the applicable three-year statute of limitations for such actions.[4]

_____

[2] It is not clear in the record the exact resolution of the criminal charges against Helen.

[3] Miss. Code Ann. §§ 75-1-101 to 75-11-108 (Rev. 2016).

[4] Trustmark admitted that Check No. 3646 for $900 was not barred because it was tendered on March 26, 2018, and the complaint was filed within three years of that date on March 18, 2021.

4

Alternatively, Trustmark argued that any causes of action not subject to the UCC were still barred by Mississippi's three-year catch-all statute of limitations, Miss. Code Ann. § 15-1-49 (Rev. 2012). Trustmark attached an affidavit to the motion verifying, among other things, the check-payment dates.

¶8. On August 13, 2021, BancorpSouth filed a motion to dismiss or, in the alternative, for summary judgment. In its motion, BancorpSouth stated that the complaint alleged Helen wrote five "unauthorized checks" paid by the bank between the dates of December 29, 2017, and January 11, 2018. BancorpSouth alleged that the plaintiffs filed the complaint on March 18, 2021, which was more than three years after each of the checks were allegedly paid, and therefore the claims were barred. BancorpSouth attached an affidavit to the motion verifying, among other things, the check-payment dates.

¶9. On February 14, 2022, Erin and Shaun filed a joint response to both of the motions to dismiss. They essentially repeated the facts alleged in the complaint and did not attach any affidavits. They argued that Erin was first notified of Helen's suspicious activity on March 28, 2018, when Trustmark called her and reported it. The plaintiffs argued that the statute of limitations did not begin to run until March 28, 2018, and the complaint was filed within three years of that date on March 18, 2021. Finally, they argued the motions to dismiss were filed under Mississippi Rule of Civil Procedure 12 as a test of the legal sufficiency of the

pleadings, so the facts alleged in the complaint were to be "accepted as true."[5]

¶10.    The circuit court held a hearing on February 28, 2022.  At the hearing, the parties made similar arguments, and no testimony or additional exhibits were offered.  Erin and Shaun argued that the statute of limitations began to run from the date they notified the bank that Helen had committed crimes by cashing those checks, not the dates of the checks.  In this case, Helen was arrested in April 2018, so they argue the three-year statute of limitations would have started at that time since that was when the bank knew it had to repay the money Helen allegedly took.

¶11.    The court issued separate written orders granting the banks' respective motions to dismiss.  On March 28, 2022, the court granted BancorpSouth's motion to dismiss.  On April 8, 2022, the court granted Trustmark's motion to dismiss.  Both orders explained that the claims asserted were governed by the UCC because they all arose from a claim of conversion of negotiable instruments.  As such, the circuit court ruled the causes of action accrued at the time of the checking transactions and were thus barred by the UCC's three-year statute of limitations.  Further, the circuit court held that even if the three-year catch-all statute of limitations applied, the claims were barred due to being filed more than three years after any potential negligent act occurred.  The circuit court expressly directed that both rulings were

---

[5] Motions to dismiss for failure to state a claim, M.R.C.P. 12(b)(6), must be treated as motions for summary judgment, M.R.C.P. 56, when matters outside the pleadings are considered.  M.R.C.P. 12(c); *accord Delta MK LLC v. Miss. Transp. Comm'n.*, 57 So. 3d 1284, 1290 (¶17) (Miss. 2011); *State v. Bayer Corp.*, 32 So. 3d 496, 503 (¶24) (Miss. 2010); *Bolton v. Equiprime Inc.*, 964 So. 2d 529, 533-34 (¶11) (Miss. Ct. App. 2007).

to be entered as final judgments. *See* M.R.C.P. 54(b). Erin and Shaun appealed from those judgments.

## STANDARD OF REVIEW

¶12. The motions to dismiss Trustmark and BancorpSouth filed included affidavits and documents outside the pleadings. As such, the motions were converted to motions for summary judgment. M.R.C.P. 12(c). Appellate courts apply a de novo standard of review when considering a trial court's ruling on a motion to dismiss, *Dobbs v. City of Columbus*, 285 So. 3d 1219, 1222 (¶7) (Miss. Ct. App. 2019) (citing *Scaggs v. GPCH-GP Inc.*, 931 So. 2d 1274, 1275 (¶6) (Miss. 2006)), or a motion for summary judgment. *Smith v. Franklin Custodian Funds Inc.*, 726 So. 2d 144, 146 (¶6) (Miss. 1998) (citing *Moore ex rel. Benton Cnty. v. Renick*, 626 So. 2d 148, 151 (Miss. 1993)). De novo review here requires that we use "the same standard applied by the trial court" and "examine all evidence in the record in a light most favorable to the non-moving party." *Id.* (citing *Smith v. Sanders*, 485 So. 2d 1051, 1054 (Miss. 1986)).

¶13. When this Court reviews a grant of summary judgment, we view "all evidence in the light most favorable to the non-movant, including admissions in pleadings, answers to interrogatories, depositions, affidavits, etc., and will presume that all evidence in the non-movant's favor is true." *Watts v. Watts*, 366 So. 3d 863, 872 (¶27) (Miss. Ct. App. 2022) (internal quotation marks omitted) (quoting *Downs v. Choo*, 656 So. 2d 84, 85 (Miss. 1995)). The moving party "has the burden of persuading the court that there are no genuine issues

7

of material fact and, therefore, they are entitled to summary judgment as a matter of law. *Id.* (citing *Daniels v. GNB Inc.*, 629 So. 2d 595, 600 (Miss. 1993)). "If there is a doubt as to whether there exists a genuine issue of material fact, the non-movant receives the benefit of that doubt." *Id.* (citing *Mantachie Nat. Gas Dist. v. Miss. Valley Gas Co.*, 594 So. 2d 1170, 1172 (Miss. 1992)).

## ANALYSIS

¶14. On appeal, Erin and Shaun largely argue that the circuit court erred by finding the claims against BancorpSouth and Trustmark were statutorily time-barred. The plaintiffs presented claims of breach of contract, breach of fiduciary duty, negligence, negligent hiring, and negligent supervision. We address these claims in two parts.

¶15. The claims of breach of contract and fiduciary duty against both banks arose out of the conversion of the checks Helen wrote, which are categorized as negotiable instruments.[6]

---

[6] The UCC defines a negotiable instrument as the following:

[A]n unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:
(1) Is payable to bearer or to order at the time it is issued or first comes into possession of a holder;
(2) Is payable on demand or at a definite time; and
(3) Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain (i) an undertaking or power to give, maintain, or protect collateral to secure payment, (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral, or (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor.

Miss. Code Ann. § 75-3-104(a)(1)-(3).

8

The UCC governs checks as negotiable instruments at the time they are presented to a bank for deposit. *See Hancock Bank v. Ensenat*, 819 So. 2d 3, 9 (¶26) (Miss. Ct. App. 2001) (citing *White v. Hancock Bank*, 477 So. 2d 265, 271 (Miss. 1985) (stating "the rights and responsibilities of the parties are determined by reference to the Mississippi Uniform Commercial Code" once a check is presented to the bank)). In other words, once a check is endorsed and delivered to the bank, litigants have "entered the world of the Uniform Commercial Code." *Id.*

¶16. The claims of breach of contract and fiduciary duty "entered the world" of the UCC once the checks at hand were presented to the banks. Article 3 of the UCC, governing negotiable instruments, provides in part:

> Unless governed by other law regarding claims for indemnity or contribution, an action (i) for conversion of an instrument, for money had and received, or like action based on conversion, (ii) for breach of warranty, or (iii) to enforce an obligation, duty, or right arising under this chapter and not governed by this section must be commenced within three (3) years after the cause of action accrues.

Miss. Code Ann. § 75-3-118(g). Article 4, which governs bank deposits and collections, provides in part that "[a]n action to enforce an obligation, duty, or right arising under this chapter must be commenced within three (3) years after the cause of action accrues." Miss. Code Ann. § 75-4-111.

¶17. "A cause of action accrues when it comes into existence as an enforceable claim." *Moton v. City of Clarksdale*, 367 So. 3d 979, 984 (¶17) (Miss. 2023) (internal quotation marks omitted) (quoting *Bullard v. Guardian Life Ins. Co. of Am.*, 941 So. 2d 812, 815 (¶11)

9

(Miss. 2006)). Just as the UCC applied once the checks were presented to the bank, an actionable claim of breach of contract accrued as well. Funds for the disputed checks were withdrawn from the BancorpSouth account between the dates of December 29, 2017, and January 11, 2018. As for Trustmark, funds for the disputed checks were withdrawn between the dates of December 4, 2017, and February 26, 2018.[7] The latest any claim could have been timely filed as to BancorpSouth was January 11, 2021, and as to Trustmark (for six of seven checks), the latest date was February 26, 2021. The plaintiffs filed the complaint against Trustmark and BancorpSouth on March 18, 2021. We therefore find that the claims governed by the UCC are statutorily barred because more than three years passed between the time those checks were tendered to the bank and the filing of the lawsuit.

¶18. In *Peoples Bank of Biloxi v. McAdams*, 171 So. 3d 505 (Miss. 2015), the Mississippi Supreme Court distinguished between UCC claims and common law negligence claims. *Id*. at 508 (¶12). In that case, an attorney forged checks and allegedly hid bank statements to prevent the plaintiff from discovering the fraud. *Id*. at 506-07 (¶¶3-6). The plaintiff filed a complaint against Peoples Bank alleging negligence, gross negligence, and conversion of a negotiable instrument. *Id*. at 507 (¶7). The bank filed a motion for summary judgment on the ground that the plaintiff's causes of action were time-barred by state law, but the trial court denied the motion. *Id.* On appeal, the bank argued that the claims were time-barred,

---

[7] A check was also tendered on March 26, 2018, but Trustmark admits on appeal that the corresponding claim is not barred by the statute of limitations.

10

and the plaintiff disagreed, stating that each of the claims was subject to the "discovery rule" contained in Mississippi Code Annotated section 15-1-49. *Id*. at 509 (¶14). The catch-all statute containing the discovery rule provides:

> All actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after. . . . In actions for which no other period of limitation is prescribed and which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury.

Miss. Code Ann. § 15-1-49(1)-(2).

¶19. The supreme court disagreed that all the plaintiff's claims were subject to this discovery rule, stating that "the discovery rule is inapplicable in actions involving conversion of negotiable instruments unless the defendant asserting the statute of limitations is involved in the fraudulent concealment." *McAdams*, 171 So. 3d at 509 (¶14) (quoting *Franklin Custodian Funds*, 726 So. 2d at 148 (¶16)). Because the plaintiff had not alleged that the bank engaged in the concealment, the discovery rule was inapplicable to the conversion claim. *Id*. at (¶16).

¶20. However, the supreme court went on to state that the plaintiff's negligence and gross negligence claims *were* subject to the discovery rule. *Id*. at (¶17). Specifically, the supreme court explained:

> [N]egligence/gross negligence claims are subject to the discovery rule of Section 15-1-49(2), essentially that the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury.

11

*Id*. (internal quotation marks omitted). In addressing these claims according to the discovery rule, the supreme court held that the statute of limitations began to run at the time the bank statements became available to the plaintiff. *Id*. at 510 (¶21). In so finding, the court emphasized that a reasonable person, by due diligence, could have discovered the fraudulent activity by simply asking for a bank statement. *Id*. The claims of negligence and gross negligence, like the conversion claim, were thus barred by the statute of limitations. *Id*. at (¶22).

¶21. Similarly, the negligence claims here are also subject to the catch-all statute of limitations and the applicable discovery rule. Nevertheless, we find that the negligence claims are time-barred according to the holding in *McAdams*. Katheryn was sent a bank statement each month from both banks, and these statements were in the record and verified by affidavits. Each bank statement provided was sent more than three years before the filing of this action.[8] There is no genuine issue of material fact remotely suggesting that Katheryn did not receive these statements.[9] Each statement had a copy of the actual checks written and tendered by Helen. We find that a reasonable person, as referenced in *McAdams*, would have noticed or inquired into such excessive withdrawals when seeing a bank statement each month. Therefore, the negligence claims grounded in common law are statutorily time-

---

[8] Again, our disposition does not address the check for $900 tendered on March 26, 2018, which Trustmark admits relates to a timely claim.

[9] The only affidavits on the matter contained in the record are from BancorpSouth and Trustmark personnel confirming that the bank statements were mailed to Katheryn each month along with copies of the statements.

barred.

¶22. Finally, Erin and Shaun argue that the circuit court erred by converting the banks' Rule 12(b)(6) motions to dismiss into Rule 56 motions for summary judgment because the plaintiffs were not given proper notice. "[T]he trial court must give the parties ten days' notice that it is converting the moving party's motion to dismiss on the pleadings into a motion for summary judgment." *Sullivan v. Tullos*, 19 So. 3d 1271, 1275 (¶15) (Miss. 2009) (quoting *Palmer v. Biloxi Reg'l Med. Ctr.*, 649 So. 2d 179, 183 (Miss. 1994)). Trustmark and BancorpSouth filed their motions on June 21, 2021, and August 13, 2021, respectively. Both parties' motions were styled as motions to dismiss or, in the alternative, for summary judgment. The plaintiffs did not file a response to either motion until several months later on February 14, 2022. The plaintiffs knew for many months that the motions had affidavits attached and yet filed no responsive affidavits. We find that the plaintiffs were not entitled to any additional notice from the circuit court before considering matters outside the pleadings because both banks' initial motions to dismiss were clear that they were alternatively requesting summary judgment. *See In re Blalock*, 537 B.R. 284, 294 (Bankr. S.D. Miss. 2015) (holding that a motion to dismiss requesting summary judgment as alternative relief was sufficient notice for a debtor in converting that motion into one for summary judgment).

## CONCLUSION

¶23. The plaintiffs' claims against BancorpSouth are time-barred, and their claims against

Trustmark regarding the first six of the seven checks listed above, *see supra* ¶3, are also time-barred. We therefore affirm the circuit court's judgments in favor of Trustmark and BancorpSouth.

¶24. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., WESTBROOKS, McDONALD, McCARTY, SMITH AND EMFINGER, JJ., CONCUR. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. GREENLEE, J., NOT PARTICIPATING.**